Counting down. Okay. May it please the Court, AFA submits that the District Court erred in this case when it granted Mesa's motion to dismiss. AFA submits that on the face of the complaint, we pled sufficient allegations to make out a case that Mesa should be compelled to arbitrate the accessorship clause under 184 of the Railway Labor Act. From November 1999, Mesa purchased CC Air. It kept it as a separate airline for two and a half years. It complied with the AFA CC Air Collective Bargaining Agreement, which had a successorship clause. So no issue arose. Then in November 2002, they made a determination they would end the airline's operations. They took over Mesa, excuse me, Mesa took over CC Air's routes. They hired their pilots. They gave them seniority. But they said flight Attendants were not interested, and they walked away. We filed a grievance saying successorship provision clearly requires the purchasing company to hire those flight Attendants and to give them their seniority. In fact, if I could, I'd like to read the successorship provision because it's quite broad. This agreement shall be bonding upon any successors of the company or in the control of the company which shall employ the flight Attendants on CC Air Incorporated flight Attendant seniority list in accordance with provisions of the grievance, regardless of the nature of the transfer, including purchase, sale, merger, consolidation, unification, acquisition, transfer of assets, leasing of the operation, reorganization, arrangement for the benefit of creditors, bankruptcy. Here Mesa purchased the entire company, operated it separately, and then folded it. They walked away from this provision. Judge Wake clearly erred because he failed to recognize once he made the determination in his decision that Mesa was the successor, as he states quite clearly, he should have then denied the motion to dismiss. There can be no question under the AFA Delta case, the D.C. Circuit, the only case really on all fours on point, said quite clearly, although a grievance under a collective bargaining agreement which no longer exists, survives with the new employer because it's an action for money damages. What would have been the venue for the arbitration? Well, since CC Air no longer existed and there was no longer any system board under the CC Air contract, that's where we filed with the Mesa agreement. But what case authority supports filing an arbitration with an organization that was not the arbitral organization for the group at issue? That just by happenstance happened to be the same group. But what if they had been a different group? A different entity or different tribunal? Wasn't there a specific tribunal for disputes with CCBA that was different than the tribunal that would have been? Yes. Association of Flight Attendants represents flight attendants both on Mesa and CC Air. And if they had followed the CC Air agreement, they would have combined the seniority lists and would have become. But they didn't. No, they didn't. So if they didn't, then wouldn't the flight attendants have had to sue the Mesa in the Mesa forum? Yes. And that's exactly. We filed the grievance after CC Air went out of business. I mean, CC Air, wouldn't you have had to file with the forum that adjudicated disputes between CC Air and the flight attendants? And isn't that, in fact, the fact pattern at Delta where West, Western, the Western Board of Adjustment was brought in? Yes. Originally, Western, we filed the Delta announced that they were merging with Western, buying them and then dissolving them. And we filed a grievance. There was also litigation involved. And ultimately, the D.C. Circuit said that Delta must now respond, answer in arbitration with AFA. Now, there is no Delta at that time, and still true, Delta is not unionized. There is no system board for Delta. Arbitration, the Court meant that we would the parties would hire an arbitrator who would hear the case. It wouldn't be under the system board provisions of the Western agreement since it no longer existed. But hadn't the union invoked the provisions of the agreement with Western directly? Yes. Yes. Initially, they did. That's not the case here. Well, I think that's an issue which, again, in arbitration, we prepared to show the procedural issues of why that occurred. And that is for the arbitrator to decide. Under the John Wiley and Sons case, it's very clear issues of timeliness, form, et cetera, should be resolved by the arbitrator, not the court. But the court originally decides whether or not it should be arbitrated at all, right? Correct. And that's why we believe that under the Delta case, this case is even closer. Or the facts are even better than Delta, because there was no representation issue. And originally, the Delta case arose, and the whole argument was, enforcing the successorship agreement, would that invoke or intrude on the jurisdiction of the National Mediation Board, which, under 290 of the Railway Labor Act, has exclusive jurisdiction to make representation issues. Why was there no grievance filed before the CCA or before? As we allege, as we state in the complaint, for a very simple reason. We made the mistake of trusting the company's words. They said that they would give jobs to the flight attendants. And for that reason, we mistakenly relied on that promise. And after the company went out of business, there was no CCA or system board in which to file, and our only alternative was to file with MESA. And again, on a motion to dismiss, we must accept the allegations as true. And here, the judge did not. He, in fact, in the Delta case, in discussing the Delta case, he made a rather odd statement. He says, Delta, on its facts, does not resolve whether a successor, which is different from the original party to the CBA, can be compelled to arbitrate under the original party CBA to which successor has not bound itself. In fact, that's exactly what the Delta case says, that a successor is bound to arbitrate it because it's a issue of money damages. We're not seeking specific enforcement to require MESA to adopt the CCA agreement. We accept the fact, and we represent it to the district court quite clearly. We're not seeking specific performance. Further, the court erred when he went off into analysis of whether, in fact, the CCA flight attendants are employees of MESA. Well, that is the heart of, that's the genesis of this dispute, and that's the heart of the dispute, which is to be resolved in arbitration. Are they, in fact, or is MESA, in fact, required to hire the former CCA flight attendants? If it's required to hire them, by definition, they wouldn't be employees because you don't hire employees, people who are employees already. But that issue is not dispositive of the underlying issue. The cases cited by the court and by MESA all have to do, as we distinguish in our brief or reply brief, they either run under a different act. The Piles, I believe it's the Piles case, that had nothing to do with successorship agreement. It had to do with United Airlines purchasing specific routes from Pan Am, and the union got involved and said, you know, we'll agree to let you hire a certain number of Pan Am flight attendants. I mean, if you read the case very carefully, read the judge's decision carefully, he says they bought a series of routes. They didn't buy the company. It was split up. There was no successorship involved. That case has nothing to do with this case. How could a non-employee file a grievance under a collective bargain agreement? Well, a non-employee. Well, our position is that the CCA flight attendants were employees by virtue of the successorship provision upon the purchase of CCA by MESA. And for two and a half years, MESA observed and complied with the CCA contract. When CCA went out of business, they were still employees because automatically they were supposed to be hired by MESA. It's like an employee who's terminated, and then the company, and believe it or not, companies still take this position. You're not an employee. You can't grieve this. Of course, arbitrators dismiss that out of hand. And I think that's the same rationale the district court used. The employees were not terminated. But I understand your argument. They were not terminated because they were not hired. I understand your argument. Okay. You saved a little time. Let's hear from the other side, and then you can have rebuttal. May it please the Court. My name is Joseph Manson, and I'm counsel for the Appley MESA Airlines. This case, the court below focused on two critical components right from the beginning. The first was whether the employees at issue were employees of MESA Airlines, and the court found that they were not. The second key point was whether or not MESA was a party to the collective bargaining agreement that was alleged to have been breached, and the court found that it was not. And so under the clear meaning of Section 204 of the Railway Labor Act, which is carefully crafted to resolve disputes between a carrier and its employees, which is what the statute says, with respect to terms and conditions of employment, at that carrier, the judge correctly found that there was no obligation to arbitrate a dispute that was brought under the CCAIR contract by the same union that represented these employees with a different employer and different working rules and rates of pay. Counsel, what's your response to opposing counsel's position that it would be a question for the arbitrator whether or not the flight attendants were employees of MESA Airlines, and whether or not MESA was a party to the collective bargaining agreement that was alleged to have been breached? I think that the thing that the court did was it brought a case in the state court and the court there correctly said, no, this is preempted by the Railway Labor Act because you have an employment relationship with United because United made an agreement with its collective bargaining representative that you would be an employee. That does not exist here, Your Honor. And I think that the thing that the court needs to always keep in mind is the procedural path that the union chose to follow here. They filed a grievance under the MESA collective bargaining agreement. Their allegation of the breach of a contract was not under the MESA collective bargaining agreement, that MESA was not a party to. What if they had alleged that the violation was of the CCAIR collective bargaining agreement and that MESA was the successor to the obligations under that agreement? Would that have been sufficient? No, because whether or not MESA was a successor doesn't answer the question of whether MESA has an obligation to arbitrate. It may answer the question as to whether CCAIR had an obligation for breaching their obligations. If the right agreement was invoked, we don't dispute that the union would have had a right to file a grievance against CCAIR either before or after it shut down. The district court was correct in that assessment. And that's the path that it should have followed. But this begins to sound hyper-technical. CCAIR was purchased by MESA. MESA, in ordinary parlance, is a successor to CCAIR. CCAIR is closed down by MESA. I mean, MESA could have kept it operating. Maybe it was going to lose money. They could have kept it operating. And in a way, this just sounds to me like a technicality as to they made a mistake in terms of what arbitral board they're trying to go before, but they're trying to enforce the agreement against MESA, who is, in I think an ordinary sense of the term, a successor. What's the answer to that? Well, the answer to that is if they got a judgment against CCAIR, a favorable judgment under the arbitration, then they could have taken steps to try to enforce that judgment against MESA. They may have been successful. They may have not been successful. But that is the path that they should have taken. There are all kinds of cases, as the judge pointed out, about piercing the corporate veil in transactions where you have successorship issues and affiliate company issues and issues such as this. But the Railway Labor Act, the specific section of the Railway Labor Act that applies here and that they're seeking to come under, says unequivocally that the disputes for a system board of adjustment on a carrier are to resolve disputes between its employees and the carrier with respect to terms and conditions that exist on that carrier. Now, does that mean there couldn't be a series of circumstances where a carrier as a successor could not be held liable for a judgment or to be required to participate in a system board case for an acquired carrier? The answer to that is no, and that's the Delta case. But in that case, the key distinction is that Western and Delta merged. That was not the case at CCAIR. They never merged. They were always separate. CCAIR shut down, and if you look at the facts as they're set in the complaint and not the facts that counsel has gratuitously added in his brief and in his oral argument, this complaint says the situation was CCAIR was acquired allegedly by Mesa Airlines. It was operated separately. It was a separate company. It went out of business, and its employees were terminated by CCAIR. That's what the complaint says. That's what the complaint says. And so then the question is whether these terminated employees at CCAIR somehow can bootstrap themselves up to come under a collective bargaining agreement that they were never a party for, that the union never represented them under, that the company never agreed to consider them under, and that the terms and conditions never applied to them. That's what we have here. So the judge correctly distinguished AFA Western and, importantly, in AFA Western. AFA brought the action against Western. They didn't bring it against Delta. They filed a contractual grievance under the Western AFA contract against Western. And what the court said was that since Western and Delta had merged and all of these employees became part of a merged carrier, they had no other way to get their grievances resolved. And so it was consistent with the Railway Labor Act under the circumstances of a merger that the merged carrier would have to deal with this in the form of addressing whether or not the grievance had merit or not. That's not the case here. And the district court was 100 percent correct in its assessment of AFA Delta and why it's not our case. They simply, the union simply chose here to try to shortcut things instead of getting a grievance that was adjudicated by CCAIR and against CCAIR and possibly being concerned CCAIR didn't have assets to satisfy, and having to go through the next step of piercing a corporate veil and filing a litigation against MESA, they tried a procedural shortcut. But that procedural shortcut is not allowed under the Railway Labor Act. It's not allowed under black letter law that says that in order to be subject to an arbitration clause, you have to be a party to that clause. You have to be a party to that agreement. And it is totally inappropriate, and the judge was 100 percent correct in his analysis. The one other thing that AFA addressed in its brief, but didn't address so far in its oral argument, is the Conrail standard and the question of whether or not showing that you have a chance, arguably, to sustain your argument on the successorship issue is, was mishandled by the judge. And again, the Conrail case stood for the proposition at the beginning that you had a carrier and employees who were subject to the Railway Labor Act on the issue that was before the court, which was drug testing. And the issue in that case was which procedural path, which part of the Railway Labor Act would be applied, whether it would be a major dispute, that is, something that wasn't covered by the existing contract, or whether it would go to a system board of adjustment which handles questions of interpretation of existing contracts. That was the analysis in Conrail. It had nothing to do with the first and critical and the first question that has to be resolved by the court, which is, is there an obligation to arbitrate at all? And there's a very good discussion in the context of the scope of an arbitration in the case that we cited, the ICP v. Continental, that deals with the Conrail statute and really disposes of the arguments that the union advanced in its brief. Thank you very much. Roberts. Thank you. You've saved some time. Mesa has always taken the position that they're a disinterested third party who had nothing to do with CCR, as if we opened up the phone book and pointed to Mesa and filed suit against them. They own the company. They made a decision to shut it down. They, the court, has said they're a successor. Having established that clearly under the successorship provision, they should comply. The fact that Judge Wake limited Delta to whether they were merged is really not relevant. That's a very pinched understanding of that case. That's what happened there. But the successorship provision that CCR negotiated was much broader than that. Let me ask you a question that may or may not be relevant. I think it will prove not to be relevant. This was dismissed under 12b-6. Did you seek to amend the complaint following the motion to dismiss? Correct. No. Okay. So nothing is we're just resting on the complaint as it stands. Right. Exactly. Yes, sir. Thank you. Thank both of you for your helpful argument.
judges: W. Fletcher, Rawlinson, Selna